THE HARTFORD FIRE INSURANCE COMPANY

*v.*

THE CITY OF PEORIA.

*Filed at Ottawa May 15, 1895.*

1. LICENSE—*power of city under charter—percentage on business done.* A city cannot, under a charter authority to demand a license fee from a certain class of business "not exceeding $500 per annum," require payment, by ordinance, of a percentage upon all business done, which may amount to more than $500.

2. SAME—*construction of ordinance concerning insurance companies.* An ordinance requiring agents of foreign insurance companies to pay to the city two per cent of the premiums received is not one for a *license,* within a clause limiting the amount of license fees, as it does not grant permission to do business, but assumes that the authority already exists.

3. CONSTITUTIONAL LAW—*power of legislature to impose terms upon foreign corporations.* The legislature has the power to impose such terms and conditions as it may choose upon foreign corporations before they can do any business in the State, and may delegate such power to a city.

4. MUNICIPAL CORPORATIONS—*ordinance regulating foreign insurance companies —discrimination.* An ordinance requiring agents of foreign insurance companies to pay a percentage upon the premiums received or effected is not invalid, as discriminating against such companies.

5. STATUTES—*what is not a repeal of power of city to tax insurance companies.* The charter power of a city having a fire department to impose a tax of two per cent upon the business of foreign insurance companies, is not taken away by a subsequent statute requiring the net receipts of such companies to be listed for taxation in lieu of all municipal licenses, where such statute expressly provides that cities having fire departments may tax the gross receipts of such companies to support such departments.

6. SAME—*such power not repealed by provision for State license.* The power of cities having fire departments to require insurance companies to pay a percentage on their business for the benefit of such departments was not taken away by the statute requiring foreign insurance companies to obtain a license from the State.

APPEAL from the Circuit Court of Peoria county; the Hon. THOMAS M. SHAW, Judge, presiding.

GEORGE L. PADDOCK, for appellant:

Ordinances and statutes imposing a rate or percentage upon insurance companies, such as that imposed by the ordinance sued on, are held in this State to be licensing provisions. *Thurber's case,* 13 Ill. 554; *Insurance Co.* v. *Lounsbury,* 21 id. 511; *Insurance Co.* v. *Peoria,* 29 id. 180; *Ducat* v. *Chicago,* 48 id. 174; *Van Inwagen* v. *Chicago,* 61 id. 31; *Walker* v. *Springfield,* 94 id. 372; *Braun* v. *Chicago,* 110 id. 192; *Chicago* v. *James,* 114 id. 479; *Chicago* v. *Insurance Co.* 126 id. 276.

It follows that the ordinance sued on must be treated as a license ordinance, and not a taxing ordinance.

Without reference to any question of repeal, we deny the validity of this ordinance, because it discriminates against non-resident insurance companies, and because no such discretion can be found in the charter. *Chicago* v. *Rumpff,* 45 Ill. 90; *Lake View* v. *Tate,* 130 id. 247.

JOHN M. TENNERY, for appellee:

A license is not a property tax, in the constitutional sense, and is not subject to the rule of uniformity. *East St. Louis* v. *Wehrung,* 46 Ill. 392; *Ducat* v. *Chicago,* 48 id. 172; *Hughes* v. *Cairo,* 92 id. 339; *Walker* v. *Springfield,* 94 id. 364; *Braun* v. *Chicago,* 110 id. 186.

But in the case at bar, if the ordinance in question be held to impose a tax it is a municipal revenue, and if uniform in imposing a tax upon all the class affected, within the city limits, is within the constitutional requirement. *East St. Louis* v. *Wehrung,* 46 Ill. 392; *Braun* v. *Chicago,* 110 id. 186; *Timm* v. *Harrison,* 109 id. 593.

Section 10 of chapter 4 of the Peoria city charter is almost identically the same as the section of the charter of the city of Springfield construed by this court in the case of *Walker* v. *Springfield,* 94 Ill. 372.

The rights of the city under this provision of the Peoria charter, as against an Illinois insurance company, were in controversy in the case of *Illinois Mutual Ins. Co.*

v. *City of Peoria*, 29 Ill. 181, where this court said: "This license money is in the nature of a tax, and is so designated by the constitution, which expressly authorizes this tax to be imposed upon all who exercise a franchise."

This license fee may safely be termed a "license tax." In several States it is recognized as such, and is so designated. *State* v. *Powell*, 100 N. C. 525; *Winston* v. *Taylor*, 99 id. 210; *Lyons* v. *Cooper*, 39 Kan. 324; *San Luis Obispo Co.* v. *Hendricks*, 71 Cal. 242; *Insurance Co.* v. *Reading*, 119 Pa. 417.

Foreign insurance companies constitute a distinct and very large class, specially recognized in our State legislation and by the courts. *Braun* v. *Chicago*, 110 Ill. 186.

The legislature having conferred upon the city the right, by ordinance, to license and tax all insurance companies doing business therein, it was competent for the city council to provide by a separate ordinance for licensing a sub-class of insurance companies, viz., foreign companies. The power to do this is necessarily or fairly implied in or incident to the general power expressly granted. *Insurance Co.* v. *Swigert*, 104 Ill. 653.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This is an action by appellee, against appellant, to recover two per cent upon the gross premiums received for business done within the city limits from November, 1884, to April 1, 1889. The action is based upon the following section of an ordinance of the city passed September 16, 1884, which took effect and was in force from and after the 18th day of that month:

"*Sixth*—Insurance agents or brokers representing corporations, companies or associations not incorporated under the laws of Illinois, engaged in the business of effecting fire insurance in this city, shall pay to the city treasurer $2 on the $100, and at that rate upon the amount of all premiums which, during the half year end-

ing every first day of May and November, shall have been received or agreed to be effected in said city by or with any such corporations, companies and associations: *Provided*, that the moneys arising from such tax or license rates shall be applied to the maintenance and support of the fire department of said city.

"All corporations, companies or associations not incorporated under the laws of the State of Illinois, engaged in said city in effecting fire insurance, shall pay to the city treasurer of said city the sum of $2 upon the $100, and at that rate upon the amount of all premiums which, during the half year ending on every first day of May and November, shall have been received, or shall have been agreed to be paid, for any insurance effected or agreed to be effected in said city by or with such corporation, company or association, and which rates, when collected, shall be set apart for the support and maintenance of the fire department of said city.

"Every person who shall act as agent, solicitor or otherwise, of any such corporation, company or association, shall, on or before the fifteenth days of May and November in each year, render to the city clerk of said city a full, true and just account, in writing, verified by his oath, of all premiums which, during the half year ending on every first day of May and November preceding such report, shall have been by him received, or any other person for him, or shall have been agreed to be paid for or in behalf of any such corporation, company or association. Thereupon such agent shall pay the treasurer of said city, at the time of rendering such account, the amount of rates for which the corporation, company or association represented by him is respectively chargeable by virtue hereof, and upon his presenting his receipt for the same to the city clerk he shall be authorized to issue a license to such insurance company, setting forth the time for which it is granted and the amount of said payment.

"If such account be not rendered on or before the day hereinbefore designated for that purpose, or if the said rates shall remain unpaid after that date, then such person, agent or solicitor shall be subject to a penalty in the sum of $500 for each offense, which may be enforced by fine and imprisonment by suit in any court of competent jurisdiction, in all of which proceedings made and taken as are provided in other cases for violation of the ordinances of this city. Such rates so due and unpaid may be further recovered of such corporation, company or association, or its agents or solicitors, by an action in the name and for the use of said city as for money had and received for its use."

The plaintiff recovered a judgment in the circuit court for the sum of $518.88 and costs of suit, to reverse which this appeal is prosecuted.

There is no controversy between the parties as to the facts upon which the recovery below was had, nor is it denied by appellant that the trial was in all things regular and the judgment proper if the alleged right of action existed against it. It insists and seeks a reversal of the judgment upon the sole ground that the city of Peoria had no power or authority to make it liable to pay to its city treasurer any per cent upon the amount of premiums received by it or agreed to be paid it for insurance effected or agreed to be effected within its limits. As we understand the argument of counsel, the two principal grounds upon which the foregoing proposition is based are: First, that the city council had no power to pass the ordinance imposing the liability; and second, that if it had, that power has been repealed by subsequent legislation. As to the first of these grounds the following facts appear:

The city of Peoria has been acting under its present special charter since 1869. (2 Private Laws of 1869, 113.) Section 10 of chapter 4 gives the city council exclusive power to license, tax and regulate within the city all insurance companies and their agents doing business in

the same, and to compel such companies or their agents to take out such license and pay such taxes. Section 7 of the same chapter provides: "The city council shall have * * * power, within the jurisdiction of said city, by ordinance, first, to prevent and punish forestalling; * * * second, to restrain and prohibit all descriptions of gaming and fraudulent devices; * * * third, to regulate the selling or giving away of distilled or fermented liquors; fourth, to forbid the selling or giving away of any distilled or fermented liquors to any minor," etc. The following eight clauses, to and including the twelfth, confer the power to license tavern-keepers, billiard tables, hackmen, auctioneers, hawkers, exhibitions, butchers and porters. The thirteenth clause is as follows: "The city council shall have power, within the jurisdiction of said city, by an ordinance, * * * to authorize the mayor and city clerk, or either of them, to grant and issue licenses, and direct the manner of issuing and registering thereof, and the fees to be paid therefor: *Provided*, that no license shall be granted for more than one year, and that not more than $500 shall be required to be paid for any license under this act, * * * but no license for the sale of wines or other liquors, at wholesale or retail, or by inn-keepers or others, as aforesaid, shall be less than $50. Bond shall be taken, on the granting of such license, for the due observance of the ordinances or the regulations of the city council, as said city council shall by ordinance direct."

It is contended, on behalf of the appellant, that the effect of the provisions of the foregoing ordinance was to license the company to do business in the city, and that under the limitation contained in the thirteenth clause of section 7, *supra*, of its charter, no more than $500 could be required to be paid for such license, whereas the ordinance requires $2 on the $100 of all premiums received, etc., which must remain an unascertained sum until the premiums are received or agreed to be paid, and may

amount to much more than $500, and therefore the city
council had no power, under its charter, to pass the ordi-
nance.  An attempt is made to reply to this position by
saying, in this case the amount claimed is much less than
$500 per year, and that although the two per cent might
in a given case exceed $500, the ordinance would be law-
ful and collections could be had to that extent.  This
answer does not meet the question raised, which is, had
the city council authority, under its charter, to demand
for a license a sum which might exceed $500?  Suppose an
ordinance had been passed under this charter requiring a
tavern-keeper or butcher to pay a certain per cent of the
proceeds of his business for a license to carry it on which
would amount to $1000 a year; could he not have insisted
that the language of the thirteenth clause of section 7,
"not more than $500 shall be required to be paid for any
license," rendered the ordinance void?  Besides this, to
place the validity of the ordinance on the ground con-
tended for would make it operate unjustly upon different
companies doing business in the same city.  The theory
upon which such charges are made against insurance com-
panies is that, the money being appropriated exclusively
to the fire department, each company is benefited in pro-
portion to the amount it is required to pay, because, as
the efficiency of that department is increased, the risk on
insurance is decreased.  But if recovery can be had to the
extent of $500 against those companies whose receipts at
two per cent will yield that sum, and no more can be
recovered against those whose receipts are twice as much,
unjust discrimination against companies doing the smaller
business will result.

But we think a full and complete answer to the con-
tention of counsel for appellant is to be found in the fact
that the ordinance in question does not provide for or
authorize the issuing of a license, within the meaning of
section 7 of the charter, and therefore the thirteenth
clause of that section in no way affected or limited the

power of the city council to pass it.   The powers given
under section 10 are wholly independent of and uncon-
trolled by section 7.   Much of the difficulty upon this as
well as the other grounds urged for reversal arises from
the failure of counsel to distinguish, in their argument, be-
tween the duty and liability imposed upon an insurance
company by this ordinance, and the granting of a license,
as ordinarily understood, to do or carry on a particular
business.   License means "permission or authority;"
"freedom to act;" "to be left free;" "allowable;" and it
needs no argument to show that the word is used in that
sense in clause 13, section 7, *supra.*   As before said, the
ordinance does not grant or authorize the granting of per-
mission or authority to do an insurance business in the
city of Peoria.   On the contrary, it assumes that such
authority exists independently of its provisions.   It
applies to agents and companies engaged in the business
of effecting fire insurance in the city.   When the charges
provided for in the ordinance have been paid for the past
six months' business, the city clerk is "authorized to issue
a license to such insurance company, setting forth the
time for which it is granted and the amount of said pay-
ment."   The use of the word "license" in this connection
means no more than a receipt for the payment, stating
what it is for.   It protects the person, agent or solicitor
against the penalty pronounced against him for not ren-
dering the account or failing to make payment, and the
corporation from further liability.   It is true that stat-
utes and ordinances of this kind have sometimes been
referred to as licensing insurance companies to do busi-
ness.   Thus, in *Walker* v. *City of Springfield*, 94 Ill. 364, in
holding that such an ordinance as this did not impose
double taxation, we said: "And this is not a tax, nor is
it in the nature of a tax.   It is the fee or sum paid for a
license.   It is only the mode of ascertaining the amount
of the fee," etc.   But there is no authority in that case,
or any other case to which our attention has been called,

for holding that the ordinance in question is a license, within the meaning of clause 13 of section 7 of the Peoria charter.

The position that the ordinance is invalid because it discriminates against non-resident insurance companies cannot be maintained. Foreign corporations are only permitted to do business in this State by comity or consent. The General Assembly has the power to impose such burthens, terms and conditions as it may choose on such bodies before they can do any business in this State, or may prohibit them therefrom altogether. (*Walker* v. *City of Springfield, supra.*) The legislature can unquestionably delegate that power, as it has done, to the city of Peoria within its city limits, by section 10 of its charter.

As to the second ground urged for reversal, viz., that the power of the city of Peoria, under its charter, to enforce this liability, has been taken away by later acts of the legislature, it is first contended that such power is in conflict with section 30, chapter 73, of the statute of 1869, as amended in 1879, which is as follows : "Every agent of any insurance company incorporated by the authority of any other State or government, shall return to the proper officer of the county, town or municipality in which the agency is established, in the month of May, annually, the amount of the net receipts of such agency for the preceding year, which shall be entered on the tax lists of the county, town and municipality, and subject to the same rate of taxation, for all purposes,—State, county, town and municipal,—that other personal property is subject to at the place where located, said tax to be in lieu of all town and municipal licenses; and all laws and parts of laws inconsistent herewith are hereby repealed : *Provided*, that the provisions of this section shall not be construed to prohibit cities having an organized fire department from levying a tax or license fee, not exceeding two per cent, in accordance with the provisions of their respective charters, on the gross receipts of such agency,

to be applied exclusively to the support of the fire department of such city." (1 Starr & Curtis, 1327.)

The proviso to this section is a clear refutation of the claim that it was intended to repeal the chartered powers of Peoria to pass and enforce the ordinance under which this action is brought. From what we have already said it will sufficiently appear that the charter of the city of Peoria, as to the power to license, tax and regulate insurance companies within its limits, is not materially different from that of the city of Springfield, as shown in the *Walker case*, cited above. That charter provides: "The city council shall have power, within the jurisdiction of said city, by ordinance, first, to regulate agencies of all insurance companies, and to license, tax and regulate agents of all insurance companies doing business in said city." The action there was upon an ordinance in substance like the one under which this suit is brought. It was then insisted that this section 30 repealed the provisions of the Springfield charter authorizing the tax or fee sued for, but it was held that it did not, and we are unable to see why the decision in that case should not control here. Peoria has the same right to levy and collect a two per cent tax on foreign insurance companies that Springfield has.

But it is said: "The State license legislation comprised in the act of June 4, 1879, worked a repeal of the charter power asserted by appellee, if such power had not been repealed by the prior legislation. The State license, under that law, was a warrant for the transaction of the business of appellant free from any licensing power of appellee." The legislation here referred to is sections 1 to 5, inclusive, of chapter 73, *supra*, under the heading, "Foreign Companies," prohibiting such companies from doing business in this State until they have complied with certain requirements therein set forth. These requirements are, in substance, that a written application shall first be filed with the Auditor of Public Accounts,

stating that such company desires to do business in this State; that it will accept a license therefor according to the laws of this State, which shall cease and terminate whenever it shall remove, or make application to remove, any action against it to any United States court, etc. Section 2 authorizes the Auditor, upon compliance with the requirements of section 1, "together with all other requirements now imposed by existing law," to issue to such company a license to transact its business in this State, etc. Section 3 provides for the revocation of such license if such company shall remove any action against it from a State court to any United States court. Section 4 fixes a penalty against companies and their agents for doing business in the State in violation of the provisions of the act, and section 5 repeals all laws and parts of laws in conflict with the provisions of the act. Does this act repeal the power given the city council of Peoria by its charter, under which the ordinance in question was passed? In other words, are the two so far in conflict that the former repeals the latter?

As we have already said, the ordinance does not assume to grant permission or authority to foreign insurance companies to do business within the city limits, but recognizes their right to do so without such permission or authority. All that it assumes to do is to require these companies, at the end of each six months, to pay two per cent upon all premiums received during such past period for insurance effected or agreed to be effected in the city. The title of the foregoing act is, "An act for the better regulation of the business of insurance, and for the protection of the citizens of this State in their dealings with insurance companies." It thus clearly appears that it was not intended to take away from cities having a fire department the power to require insurance companies to pay a per cent of the proceeds of their business into the city treasury for the benefit of that department. It does not assume to deal with the question

of such liability or taxation in any manner.    Its principal object manifestly is to protect citizens of this State against ·the removal of cases to United States courts. As well might it be said this act is in conflict with section 30, *supra,* as that it is with the power of the city council of the city of Peoria to pass this ordinance.    If the words "tax" and "license," as used in this ordinance, in the various acts of the legislature and in the decisions of this court referred to by counsel, are given the meaning there intended to be given them, this case is free from confusion and difficulty.

The judgment of the circuit court is right and should be affirmed.

*Judgment affirmed.*